UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PERCY R. RICKS

CIVIL ACTION

VERSUS

WYATT FIELD SERVICE COMPANY           NO. 13-00815-SDD-RLB

### RULING

This matter is before the Court on a *Motion for Summary Judgment*[1] filed by Defendant, Wyatt Field Service Company ("Wyatt"). Plaintiff, Percy R. Ricks ("Ricks"), has filed an *Opposition*[2] to which Wyatt has filed a *Reply*.[3] For the following reasons, Wyatt's *Motion* shall be denied.

**I.    BACKGROUND**

This removal action arises out of Ricks' assertion that Wyatt wrongfully terminated him for reporting an on-the-job-injury.[4] Wyatt is an industrial contracting company that provides personnel to industrial facilities for turnaround and other maintenance projects.[5] Wyatt contracted with ExxonMobil to provide such services for a turnaround at ExxonMobil's facility in Chalmette, Louisiana, from February 25, 2013 through April 18, 2013.[6] In March of 2013, Ricks began working the night-shift as a

---

[1] Rec. Doc. 10.
[2] Rec. Doc. 12.
[3] Rec. Doc. 14.
[4] The Court has subject matter jurisdiction over the case because there is complete diversity between the parties and the amount in controversy exceeds $75,000. Plaintiff is a citizen of Louisiana and Defendant is a citizen of Texas. Rec. Doc. 1, pp. 2-3, ¶¶3-8.
[5] Rec. Doc. 10-6, p. 2, ¶2.
[6] Rec. Doc. 10-3, p. 2, ¶3.

boilermaker for Wyatt on the ExxonMobil-Chalmette turnaround project.[7] On March 30, 2013, Ricks reported a job injury to his foreman, Steve Austin.[8] Incident reports were completed and Wyatt safety personnel were notified.[9] For a few days following the work place incident, Ricks was given lighter duty assignments.[10] On April 1, 2013, Wyatt managers gave Ricks permission to leave work early and Ricks was instructed to see his personal doctor.[11]

As instructed, the next day Ricks went to see his family doctor, who issued Ricks a "certificate to return to work" on April 5, 2013.[12] It is undisputed that Ricks did not report to work at Wyatt on April 2, April 3, or April 4, 2013.[13] Ricks testified that he called and spoke to "someone" in the Chalmette office, either on April 2 or April 3, and explained that he had a doctor's note excusing him from work until April 5.[14] Ricks claims that the unidentified person with whom he spoke told him to return to work on April 5, 2013 and to bring his doctor's excuse with him.[15] When Ricks reported to work on April 5, he was informed that he had been terminated for violating Wyatt's "no call, no show" attendance policy.[16]

---

[7] Rec. Doc. 10-4. Ricks was hired on March 2, 2013 to work on the night shift at ExxonMobil-Chalmette job. A turnaround is "a short-term project, during which a facility owner like ExxonMobil will shut down its facility for scheduled maintenance or other projects." Rec. Doc. 10-3, p. 2.
[8] Rec. Doc. 1-2, p. 4, ¶6. Ricks testified that he sustained his injury when he was "'[c]limbing down off a scaffold, missed the ring, [his] foot got tangled up in the extension cords and [he] fell to the lower stairway." Rec. Doc. 10-5, p. 9.
[9] Rec. Doc. 1-2, p. 4, ¶5.
[10] Rec. Doc. 10-5, p. 10.
[11] Rec. Doc. 10-5, p. 10. Rec. Doc. 10-7. On April 1, 2013, Ricks worked from 18:00-20:00 for a total of 2 hours.
[12] Rec. Doc. 10-5, p. 10.
[13] Rec. Doc. 10-5, p. 12.
[14] Rec. Doc. 10-5, p. 15.
[15] Rec. Doc. 10-5, pp. 14-15.
[16] Rec. Doc. 10-5, p. 12. Ricks testified that the "first time [he] physically returned to Wyatt or tried to return to the Wyatt premises was April 5."

Ricks points to the circumstances surrounding his termination as evidence that he was illegally terminated by Wyatt because he reported a work-related injury.[17] Ricks refers to his deposition testimony wherein he testified that his supervisors not only knew of his work-related injury but that they had also filled out incident report forms regarding his accident. Ricks further testified that Wyatt General Superintendent, Calvin Schulte ("Schulte"), was present "at the other end of the safety office" when he completed his accident report.[18] According to Ricks, he told Schulte that he suffered a work-related injury on the day of his accident and, in response, Schulte's sole comment was to get it "checked out."[19] Ricks also testified that, during daily work-shift assignments, Wyatt employees were told that Wyatt had too many recordables, or OSHA reportable work-related injuries, and that Wyatt "didn't need no more", or Wyatt would lose its contract with Exxon.[20] Ricks, however, did not identify who made these statements.[21]

On the other hand, Wyatt has offered evidence of a legitimate, non-retaliatory reason for Rick's termination. Wyatt submits that it was experiencing excessive absenteeism problems among its employees on the ExxonMobil-Chalmette jobsite.[22] As a result, Schulte routinely reviewed attendance records to ensure the employees were complying with Wyatt's attendance policy which requires that employees notify the jobsite timekeeper prior to their scheduled shift to report an absence or incidence of

---

[17] La. R.S. 23:1361.
[18] Rec. Doc. 10-5, p. 10.
[19] Rec. Doc. 10-5, p. 14. ("Q. Did Calvin say anything back to you? A. Yes. Q. What did Calvin say? A. Get it checked out. Q. Is that all he said, then? A. Yes, sir.").
[20] Rec. Doc. 10-5, p. 16.
[21] In response to Ricks' statement that he and his co-workers were informed that Wyatt would lose its contract with ExxonMobil over the number of "recordable" injuries, Wyatt offers the affidavit of its General Superintendent Calvin Schulte, who denies that he made the statements. Rec. Doc. 10-3, p. 4, ¶19.
[22] Rec. Doc. 10-3, p. 2, ¶6.

tardiness.[23] Pursuant to Wyatt's 'no call, no show' policy, "employees who fail to report to work for three (3) consecutive days without calling in to the timekeeper will be terminated."[24] Wyatt offered evidence that its employees are trained about the attendance policy and instructed that "absences or incidences of tardiness *must be reported to the timekeeper on duty* before the employee's scheduled shift begins."[25] It is undisputed that Ricks attended an employee orientation on January 2, 2013 and knew of his obligation to report absences to Wyatt.[26]

In opposition to Wyatt's summary judgment motion, Ricks does not contravene or dispute these facts. Rather, Ricks opposes summary judgment solely on the grounds that the Court must make a credibility determination in order to ascertain Wyatt's "true motive" for the Ricks termination.[27]

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[29] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not

---

[23] Rec. Doc. 10-3, p. 2, ¶5; p. 3, ¶11.
[24] Rec. Doc. 10-3, p. 3, ¶7.
[25] Rec. Doc. 10-6, p. 2. (emphasis added). Rec. Doc. 10-3, p. 3, ¶15.
[26] Rec. Doc. 10-5, p. 6. (Ricks received orientation at Wyatt on January 22, 2013). Rec. Doc. 10-5, p. 12. ("Q. Where did you find the telephone number that you called to report your absences to Wyatt? A. You had some in your blue book that [Wyatt] give[s] you when you got hired.").
[27] Rec. Doc. 12, p. 5.
[28] Fed.R.Civ.P. 56(a) (West 2015).
[29] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, at 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

negate the elements of the nonmovant's case."[30]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[31]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[32]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[33]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[34]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[35]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without "any significant probative evidence tending to support the complaint."'"[36]

Considering that the parties in this case have requested that their case proceed as a bench trial, further considerations come into play.  The Fifth Circuit has explained

---

[30] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, at 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, at 323-25, 106 S.Ct. at 2552)).
[31] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, at 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[32] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, at 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).
[33] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[34] *Galindo v. Precision American Corp.*, 754 F.2d 1212, at 1216 (5th Cir. 1985).
[35] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, at 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).
[36] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, at 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

that "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issue of witness credibility or disputed material facts."[37] Additionally, "[i]f a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should 'draw his inferences without resort to the expense of trial.'"[38]

## III. LAW AND ANALYSIS

La. R.S. 23:1361(B) provides that "[n]o person shall discharge an employee from employment because of said employee having asserted a claim for [workers compensation]." "The purpose of La. R.S. 23:1361 is to prevent unjust dismissals and to allow employees to exercise their right to workman's compensation benefits without fear of retaliatory action by their employer."[39]

"In order to be entitled to recover for retaliatory discharge under La. R.S. 23:1361, the employee must establish by a preponderance of the evidence that [he] was discharged because [he] asserted a workers' compensation claim, either by presenting direct evidence that the assertion of a workers' compensation claim was the reason for the discharge or by presenting circumstantial evidence sufficient to establish more probably than not that the reason for the discharge was the assertion of the workers' compensation claim."[40] Rarely will an employee have direct evidence to establish his burden; nevertheless, the plaintiff-employee constantly bears the burden of

---

[37] *Matter of Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991). See also, *Turner v. Pleasant*, 2013 WL 823426, at *7 (E.D.La. Mar. 6, 2013)(discussing "somewhat greater discretion to consider what weight" the trial court will accord evidence on summary judgment involving a bench trial vice a jury trial).
[38] *Id.* (quoting *Nunez v. Spencer*, 572 F.2d 1119, 1124 (5th Cir. 1978)).
[39] *King v. Career Training Specialists, Inc.*, 35,050 (La.App. 2 Cir. 9/26/01), 795 So.2d 1223, at 1227.
[40] *Hansford v. St. Francis Medical Center, Inc.*, 43,984 (La.App. 2 Cir. 1/14/09) 999 So.2d 1238, at 1242 (hereinafter "*Hansford*")(citing *Chivleatto v. Sportsman's Cove, Inc.*, 05-136 (La.App. 5th Cir. 6/28/05), 907 So.2d 815 (hereinafter "*Chivleatto*")).

proof.[41]  "If the employer gives an alternative nondiscriminatory reason for the discharge, and presents sufficient evidence to prove more probably than not that the real reason for the employee's discharge was something other than the assertion of the workers' compensation claim, the plaintiff is precluded from recovery."[42]  "If the employer offers another reason for firing the workers' compensation claimant, the trial court must ascertain the employer's true reason or motive based on the facts presented."[43]  "If the trial court finds that it is more probable than not that the employer's nondiscriminatory explanation for the discharge is just a guise for retaliatory discharge, the employee is entitled to recovery."[44]  Ultimately, "the test for sufficiency in a circumstantial evidence case is that the evidence as a whole must exclude other reasonable hypotheses with a fair amount of certainty."[45]

On the one hand, the evidence is undisputed that Ricks failed to follow known company policy on reporting absences. Those undisputed facts establish a legitimate reason for termination. However, the circumstances are also undisputed. Ricks was terminated 5 days after reporting an on-the-job-injury. There is evidence that the General Superintendent, Schulte, who made the termination decision, knew that Ricks had made a work injury claim. There is evidence that Wyatt management knew and even instructed Ricks to obtain medical evaluation and that Ricks was permitted to leave work early to consult his physician.

---

[41] *Nicholson v. Transit Management of Southeast La.*, 2000-0706 (La.App. 4 Cir. 2/14/01), 781 So.2d 661, 668 ("an employer 'will rarely admit that the employee is being fired for filing a compensation claim.'").
[42] *Id.* (quoting *Chivleatto*, 05-136 (La.App. 5th Cir. 6/28/05), 907 So.2d 815)).
[43] *Chen v. Oschner Clinic Foundation,* 2014 WL 121601, at *3 (E.D.La. Jan. 12, 2014)(citing *Chivleatto*, 05-136 (La.App. 5th Cir. 6/28/05), 907 So.2d 815)).
[44] *Hansford*, 999 So.2d at 1242.
[45] *Locksey v. Capitol Mfg. Co.*, 517 So.2d 1102, at 1105 (La.App. 3 Cir. 1987).

In this summary judgment proceeding, the Court is essentially asked to weigh the circumstantial evidence surrounding the termination against the employer's undisputed evidence of a legitimate ground for termination. Under federal retaliatory discharge law, if the employer demonstrates a legitimate non-retaliatory reason for the termination, the burden shifts back to the employee to demonstrate that the stated reason is merely pretextual.[46] However, this is a state law retaliatory discharge claim and the Court is unaware of any state law jurisprudence which directs that the federal burden shifting analysis applies. Absent a requirement that the employee come forward with evidence that Wyatt's legitimate non-retaliatory reason for the termination is a mere pretext, the Defendant's *Motion* fails. Accordingly, the *Motion for Summary Judgment*[47] filed by Defendant, Wyatt Field Service Company, shall be DENIED.

## IV. Penalty Claim

Alternatively, Defendant Wyatt moves to limit Plaintiff's penalty claim under La. R.S. 23:1361(C) as a matter of law. Defendant argues that the maximum penalty which can be recovered by Plaintiff is the equivalent to "the amount the employee would have earned but for the discrimination."[48] To the contrary, the statute clearly and unambiguously states,

> Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination

---

[46] The employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. If a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to proffer a legitimate rationale for the employment action. The burden then shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[47] Rec. Doc.10.
[48] Rec. Doc. 10-2.

based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year's earnings, together with reasonable attorney's fees and court costs.

The penalty provision of Louisiana's retaliatory discharge statute is clear and places only one limitation upon the Court when it comes to awarding damages: penalties may not be any greater than one year's earnings. Moreover, at least one Louisiana court has noted that the retaliatory discharge statute serves a "dual purpose" as it "provides a remedy to the wrongfully discharged employee, and its acts to discourage such terminations, thus allowing employees the freedom to exercise their right to workers compensation benefits."[49] The Court construes the statute and jurisprudence as giving it some measure of discretion in calculating any penalty it determines is warranted, as long as it does not exceed one year's earnings.[50] Accordingly, Wyatt's motion shall be denied.

## V. CONCLUSION

For the foregoing reasons, the *Motion for Summary Judgment*[51] filed by Defendant, Wyatt Field Service Company, is hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on July 17, 2015.

*/s/ Shelly D. Dick*
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[49] *Bowman v. F. Christiana and Co., Inc.*, 553 So.2d 971, at 975 (La.App. 4 Cir. Nov. 16, 1989).
[50] *Id.* The *Bowman* Court also noted that "a reading of the statute indicates that the drafters intended to bestow upon the trial court a measure of discretion in the calculation of the penalty." *Id.*
[51] Rec. Doc. 10.